Nicholas Strozza, Assistant United States Trustee
State Bar No. CA 117234
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
*edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Tel.: (702) 388-6600, Ext. 234
Fax: (702) 388-6658

Attorneys for the United States Trustee for Region 17
    TRACY HOPE DAVIS

E-Filed:  December 10, 2018

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>Bakken Resources, Inc.,<br><br>                 Debtor. | Case No: BK-S-18-17254-BTB<br><br>Chapter 11<br><br>Date:   December 11, 2018 Time:  2:30 p.m.<br>Place: Courtroom 4, 2nd Flr., Foley Fed. Bldg. |

### THE UNITED STATES TRUSTEE'S OMNIBUS OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO DEBTOR'S FIRST DAY MOTIONS [ECF NOS. 4, 7, 10, 13 & 16]

To the Honorable BRUCE T. BEESLEY, Chief United States Bankruptcy Judge:

    Tracy Hope Davis, United States Trustee for Region 17 (the "United States Trustee"), by and through her undersigned counsel, hereby objects (the "Omnibus Objection") to the following "first day" motions (collectively referred to as the "First Day Motions" or the "Motions") filed by the above-captioned debtor Bakken Resources, Inc. (the "Debtor"):

- Motion Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, 364, 1107 and 1108 and Bankruptcy Rules 4001(b), 6003 and 6004 for Entry of an Order (i) Authorizing the Debtor's Use of Cash and (ii) Granting Related Relief (the "Budget Motion") [ECF No. 4];

/ / /

/ / /

- Motion for Entry of an Order Authorizing the Debtors to (a) Continue to Operate Their Cash Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Retain Prepetition Bank Accounts (d) Maintain Existing Business Forms, (e) Granting a Waiver of Compliance with Section 345 of The Bankruptcy Code, and (f) Related Relief (the "Cash Management Motion") [ECF No. 7];

- Motion for Entry of an Orders Approving Notification and Hearing Procedures for Certain Transfers of and Declarations of Worthlessness with Respect to Common Stock (the "Equity Transfer Motion") [ECF No. 10];

- Motion for the Entry of an Order (i) Authorizing, But Not Directing, the Debtor to Pay Certain Pre-Petition Taxes Governmental Assessments and Fees and (ii) Granting Related Relief (the "Taxes Motion") [ECF No. 13]; and,

- Motion for an Order Granting the Debtor Additional Time Within Which to File Schedules and Statements [ECF No. 16] ("Extension Motion").[1]

The Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Omnibus Objection.\

## I. MEMORANDUM OF POINTS AND AUTHORITIES

### A.  Introduction

The Debtor's requests for relief in the aforementioned First Day Motions should be denied because creditors and parties-in-interest do not have sufficient notice of to evaluate the relief requested and the Debtor has failed to meet its evidentiary burdens for the relief requested. A

---

[1] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

meeting of creditors pursuant to Section 341[2] has not been held, and no official committees have yet been formed. Bankruptcy schedules, the Statement of Financial Affairs, and other required documents have not been filed. Therefore, the Court should either sustain the United States Trustee's Omnibus Objection or adjourn the hearing on these Motions to a later date to allow any official committee or other parties in interest a meaningful opportunity to evaluate the Motions. The United States Trustee also expressly reserves her rights to object to any amendments made to the First Day Motions, or any other additional relief requested in any subsequently-filed motion.

**B.     Background Facts and Procedural Posture.**

1.      On December 7, 2018, the Debtor, Bakken Resources, Inc., filed a voluntary Chapter 11 bankruptcy petition ("Petition"). [ECF No.1].[3] The written consent of the Debtor's Board of Directors authorizing it to file bankruptcy is dated November 7, 2018, a month before the case was filed. [*See* ECF No. 1, p. 8 of 67].

2.      Richard Robbins signed the Debtor's bankruptcy petition as the "Authorized Signatory." [ECF No. 1, p. 4 of 67; § 17]. Mr. Robbins filed two declarations in support of the various motions: (a) the Declaration of Richard Robbins In Support of Bankruptcy Filing and First Day Motions ("Robbins Omnibus Declaration") [ECF No. 19]; and, (b) the Declaration of Richard Robbins in Support of the Cash Management Motion ("Robbins Cash Management Declaration") [ECF No. 7, pp. 23-25 of 25]. Mr. Robbins is a Director with AP Services, LLC ("APS"). APS is an affiliate of AlixPartners, LLP ("AlixPartners") and was appointed by the Debtor's Board of Directors as V.P. of Restructuring ("CRO") on either December 6 or December 7, 2018.[4] [*See* ECF No. 7. P. 24 of 25; ECF No. 19, p. 2 of 38; lines 8-9]. The Robbins Omnibus Declaration is

---

[2] Unless otherwise noted, "Section" refers to a section of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 as amended, and "FRBP" refers to the Federal Rules of Bankruptcy Procedure.

[3] Unless otherwise noted, "ECF No." refers to the main bankruptcy docket for case number, BK-S-18-17254-BTB.

[4] The Robbins Omnibus Declaration provides that Mr. Robbins was appointed as CRO on December 6, 2018, while the Robbins Cash Management Declaration provides that he was appointed CRO on December 7, 2018.

replete with opinion testimony, for example Mr. Robbin's 'belief' as to why the First Day relief is required immediately. [*See, e.g.,* ECF No. 19, ¶¶ 5, 70, 72, 74, 95, 98-102].

    3.    Debtor is a publicly traded company with securities registered under Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 781(g). [*See* ECF No. 19, p. 4 of 38; ¶ 8].

    4.    No trustee has been appointed in the Debtor's case. [*See generally* Case Docket].

    5.    No official committee of unsecured creditors or equity securities holders has been appointed. [*Id.*].

    6.    On December 7, 2018, the Debtor filed the First Day Motions. [*See* ECF Nos. 4, 7, 10, 13 & 16].

    7.    On December 7, 2018, the Debtor filed *Ex Parte* Motions for Orders Shortening Time ("OST") with regard to the First Day Motions (the "OST Motions").[5] [*See* ECF Nos. 5-6, 8-9, 11-12, 14-15, & 17-18].

    8.    On December 7, 2018, the Court granted the OST Motions and issued OSTs setting the initial hearings on the First Day Motions for December 11, 2018, at 2:30 p.m., with oppositions to be filed by December 10, 2018 at 4:00 p.m., and replies to be filed by December 11, 2018, at 2:00 p.m. [*See* ECF Nos. 26-30]. The OSTs do not contain provisions requiring service within a certain time. [*See Id.*].

    9.    On December 10, 2018, Omni Management Group, proposed Claims and Noticing Agent for the Debtor filed five (5) certificates of service indicating that, *inter alia*, the Debtor's Petition, the First Day Motions and OSTs were served on December 7, 2018 either by overnight mail or electronic mail to various parties in interest, some with foreign addresses, many with addresses outside of Nevada. [*See* ECF Nos. 32 – 36].

---

[5] Debtor's petition was filed at approximately 3:37 p.m. Pacific Time. The various motions, including the First Day Motions, were filed between approximately 3:43 p.m. Pacific Time and 4:37 p.m. Pacific Time. The five (5) OSTs entered for the First Day Motions were docketed between approximately 5:18 p.m. Pacific Time and 5:26 p.m. Pacific Time. [*See* ECF Nos. 1 – 30 at ECF date time stamps].

10. The mailing matrix attached to the petition does not contain an address for the U.S. Securities & Exchange Commission, the U.S. Attorney's Office, the Texas Workforce Commission which are may be impacted by this filing or the Debtor's operations. [*See* ECF No. 1, pp. 26-65 of 67].

11. The date first set for the meeting of creditors is scheduled for January 10, 2019. [*See* ECF No. 3].

**II.    ARGUMENT**

12. Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
>
> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

13. Accordingly, the relief sought in the First Days, if granted at all, should only be granted on an interim basis, with a final hearing set so that an Official Committee of Unsecured Creditors or an Official Committee of Equity Security Holders, if such can be formed, as well as other governmental or regulatory agencies can review and respond to the final relief sought, preferably after the schedules are filed and the Section 341 meeting of creditors is held.

14. The United States Trustee reserves all rights to further object to the final relief sought through the First Day Motions.

      **A.**      **The Budget Motion should be denied.**

15.      In the Budget Motion, Debtor seeks to have the Court approve a 90 day budget and establish a procedure of subsequent budgets pursuant to Sections 105 and 363, and FRBP 4001(b), 6003, and 6004. [*See* ECF No. 4, pp. 1-2 of 15].

16.      Debtor asserts that the expenses set forth in the Budget it seeks to have approved are ordinary course expenses that do not require approval under Section 363(b), and instead seeks to have them approved under Section 105(a). [*See* ECF No. 19, p. 10 of 38; line 4].

17.      The United States Trustee objects to this request for several reasons. First, the relief requested should not be granted on extremely short time, with little time for most creditors and parties in interest to formulate a written response to the First Day Motions. This case was filed in the afternoon, Pacific Time, on Friday and written objections are less than one business day later. Additionally, certain parties with interests directly tied to the Debtor's business operations and this bankruptcy case (*e.g.*, regulatory agencies, state attorneys general, and the U.S. Attorney's office) appear to have not received notice of the filing of or hearing on these First Day Motions.

18.      "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) (internal citations omitted).

19.      To the extent that the relief is granted at all, it should only be granted on an interim basis with a hearing noticed for final relief far enough in the future such that all creditors, parties in interest have an opportunity to object, preferably after the Debtor has filed its schedules and statements, and the Section 341 meeting of creditors has been held. The United States Trustee also objects to the provision in the proposed form of order that would transform any interim order entered into a final order on negative notice. [*See* ECF No. 4, p. 12 of 15; ¶8]. The United States Trustee further requests that any interim Order entered on these First Day Motions require that the Debtor serve on any creditors or parties-in-interest who did not receive adequate notice copies of the First Day Orders and notice of any continued/subsequent hearing on the First Day Motions.

20. Second, the Motion contains no legal authority or analysis demonstrating why this relief is required in this case under these circumstances, despite vague reference to an inability to "maintain its business operations" and a denial of the "ability to use the income from its royalties," which would in turn have an "adverse effect" on the Debtor. [ECF No. 4, at 5]. Similarly, the Motion fails to provide any analysis or authority to support as to why this relief is required on shortened time with a waiver of the notice requirements of FRBP 6003 and 6004.

21. Third, the relief requested under Section 363(b) appears to be inappropriate. The Robbins Omnibus Declaration provides that Debtor has no secured debt. [*See* ECF No. 4, pp. 4-5 of 15]. Accordingly, it is unclear whether any of the Debtor's assets constitute cash collateral as defined by Section 363(b).

22. Fourth, the Wages Motion does not provide any legal support or justification in support of any request for payment of pre-petition obligations. To the extent that the Budget Motion seeks to authorize pre-petition payments to vendors [*see, e.g.,* ECF No. 4, p. 4 of 15; ¶11], or other pre-petition payments, the Debtor should seek authorization in a separate motion that is accompanied by evidence that without payment of pre-petition bills, Debtor's vendors have indicated they will no longer provide service and are critical to Debtor's ability to reorganize. To the extent that the Budget includes prepetition wage payments, Debtor should similarly file a separate motion with a showing that the employees have indicated they will leave if not paid, are not insiders, and are not being paid over the cap set forth in Section 507(a). The "general rule is that a distribution on prepetition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstance." *See In re Airbeds, Inc*., 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988).

23. Fifth, the Motion fails to appropriately address necessary payments not explicitly included in the Budget. Accordingly, the United States Trustee objects to the extent that the Budget approval could be used to avoid or limit payments not included in a budget, for example payments approved for professional fees and expenses incurred by professionals employed by official committees.

24. Sixth, the Budget contains line items that would require separate Court approval prior to any payment. For example, the Budget includes two separate line items for "legal fees" and "consulting fees," which should require separate Court approval. [ECF No. 4, at 15]. Accordingly, the United States Trustee objects to the extent that approval of the Motion purports to approve payment of any expenses that would otherwise require separate Court approval.

25. Finally, the Debtor seeks to waive FRBP 6003 and 6004, because it asserts that without immediate relief it will not be able to operate its business or pay creditors and vendors. [*See* ECF No. 4, p. 5 of 15]. However, it admits that the Budget is comprised of ordinary course expenses that do not require approval under Section 363(b). Therefore, it appears the Debtor is simply seeking a comfort order under Section 105. Accordingly, the Debtor has not provided sufficient legal analysis or factual evidence of "immediate and irreparable harm" to warrant relief under FRBP 6003.

26. For the reasons stated above, the relief requested by the Debtor in its Budget Motion should be denied.

**B.    The Debtor's Cash Management Motion Should Be Denied**

27. Through the Cash Management Motion, Debtor seeks entry of an order authorizing the continued use of Debtor's existing cash management system, prepetition bank accounts, prepetition agency accounts, and business forms; and waiving compliance with the investment and deposit requirements of section 345(b) of the Bankruptcy Code. [*See* ECF No. 7, pp. 1-3 of 25].

28. Debtor maintains the following bank accounts [*see* ECF No. 7, p. 14 of 25]:[6]

- Wells Fargo – main operating account
- First Interstate - operating account
- Charles Schwab - investment account[7]

---

[6] Only Wells Fargo is an authorized depositories in the District of Nevada. *See* https://www.justice.gov/ust-regions-r17/file/authorized_depository_nv.pdf/download

[7] The Robbins Omnibus Declaration provides that the Charles Schwab account is 90% stocks while the Robbins Cash Management Declaration is unclear whether the account is comprised of 90% stock, or 60% stock. [*Compare* ECF No. 19, p. 28 of 38; ¶77, *with* ECF No. 7, p. 24 of 25; line 22].

Page -8-

29. Debtor states that it is possible that some of its bank accounts do or will contain funds in excess of the amounts insured by the Federal Deposit Insurance Corporation. [*See* ECF No. 7, p. 9 of 25; ¶23].

30. Section 345(a) of the Bankruptcy Code requires the trustee or a debtor in possession to deposit or invest money of the estate so that it will result in the "maximum reasonable net return. . . [while] taking into account the safety of such deposit or investment." Section 345(b) requires that estate funds be deposited or invested so as to ensure that the funds are protected for the benefit of creditors. *See* 11 U.S.C. § 345(b). The Debtor is enjoying the protections afforded it under the Code. Section 345 of the Code and the Guidelines are both designed to ensure that creditors' interests are also protected.

31. Generally, unless the funds are insured, guaranteed, or backed by the full faith and credit of the United States Government or its agencies, the institution holding the estate funds must post a bond in favor of the United States or, in the alternative, deposit securities pursuant to 31 U.S.C. § 9303 as security. To ensure that trustees and debtors in possession meet their responsibilities to safeguard funds in accordance with Section 345, the United States Trustee monitors fiduciaries and depositories. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," ("Manual"), § 7-1.1, pp. 1-2, at https://www.justice.gov/ust/file/volume_7_banking_and_bonding.pdf/download.[8]

32. The Uniform Depository Agreement between the depository and the United States Trustee requires the depository to maintain collateral, unless an order of the bankruptcy court

---

[8] The United States Trustee is mindful that some courts have concluded that guidelines established by the United States Trustee do not have the force and effect of law. *See, e.g., In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997); *In re Lani Bird, Inc.*, 113 B.R. 672, 673 (Bankr. D. Hawaii 1990); *In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995); *In re Johnson*, 106 B.R. 623, 624-25 (Bankr. D. Neb. 1989). As a result, "if the court is to require debtors to comply with particular provisions of the U.S.T.'s Guidelines, it must be for a reason independent of the Guidelines themselves." *Johnson*, 106 B.R. at 624.

Compliance with the United States Trustee guidelines will ensure that banks can identify bank accounts for debtors-in-possession, ensure that they are in compliance with the requirements of 11 U.S.C. § 345(b), and that all post-petition monies received by the debtor will be readily identifiable and easily accounted for during the pendency of this case.

provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* Manual, §7-1.2.1, p. 2.

33. The Manual states that under no circumstances should a chapter 11 debtor, trustee, or examiner establish accounts in financial institutions or depositories outside the United States without prior approval of the United States Trustee or the bankruptcy court. *See* Manual, § 7-1.2.3, pp. 4-5.

34. All depositories are required to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* Manual, § 7-1.3, pp. 5-6.

35. Pursuant to the UDA, each authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district. *See* Manual, § 7-1.3.2, p. 6.

36. Compliance with the United States Trustee Guidelines will ensure that banks can identify bank accounts for debtors-in-possession, ensure that they are in compliance with the requirements of 11 U.S.C. § 345(b), and ensure that all post-petition monies received by the Debtor will be readily identifiable and easily accounted for during the pendency of this case.

37. The United States Trustee objects to the Cash Management Motion for several reasons. First, the relief should not be granted on extremely short time, with little time for most creditors and parties in interest to formulate and file a written response to the First Day Motions. Additionally, certain parties with interests directly tied to the Debtor's business operations and this bankruptcy case (*e.g.*, regulatory agencies, state attorneys general, and the U.S. Attorney's office) appear to have not received notice of the filing of or hearing on these First Day Motions." An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (internal citations omitted).

38. To the extent that the relief is granted at all, it should only be granted on an interim basis with a hearing noticed for final relief far enough in the future such that all creditors, parties in interest have an opportunity to object, preferably after the Debtor has filed its schedules and statements, and the Section 341 meeting of creditors has been held.  The United States Trustee objects to the provision in the proposed form of order that would transform any interim order entered into a final order on negative notice.  [See ECF No. 7, pp. 17-18 of 25; ¶3]. The United States Trustee further requests that any interim Order entered on these First Day Motions require that the Debtor serve on any creditors or parties-in-interest who did not receive adequate notice copies of the First Day Orders and notice of any continued/subsequent hearing on the First Day Motions.

39. Second, the Motion does not contain sufficient evidence to support its assertions that its business operations will be disrupted or that compliance with the Bankruptcy Code and Guidelines would have an adverse impact on the operations of the Debtor. If any bank holding a specific account owned by the Debtor is not an authorized depository, the Debtor should transfer the assets therein to an authorized depository to be held in a Debtor In Possession account after receiving Court authorization. Before this relief is granted, the Court should require the Debtor to substantiate its assertions and demonstrate exactly how and to what extent transferring its accounts to an approved depository would adversely impact its operations.

40. Third, the Cash Management Motion requests authority to pay pre-petition "service charges and other fees" without providing any legal authority or factual support under the facts and circumstances of this case. Instead, the Debtor generally asserts that authorizing these payments would "prevent any disruption" to the Debtor's operations and would be in the "best interests of the Debtor, the estate, and all parties-in-interest." [ECF No. 7, at 6].. Before the Court grants such a request, the Debtor should be required to identify exactly what pre-petition obligations, service charges, and fees it will be paying.

41. Fourth, the Debtor should be required to have its accounts designated as "Debtor-in-Possession" accounts. Although the Cash Management Motion provides that Debtor will stamp to indicate it is a Debtor In Possession on old business forms, it appears that the Debtor requests

authority to relieve it of that requirement until it exhausts it old business forms. [*Compare* ECF No. 7, pp. 6-7 of 25; ¶17, *with* ECF No. 7, p. 18 of 25; ¶5]. To the extent the Court grants the relief requested, the Debtor should be required to indicate its status as a Debtor In Possession with a stamp until it exhausts its old business forms.

42. Fifth, the proposed form of order also appears to allow Debtor to open new accounts without seeking additional Court approval. [*See* ECF No. 7, pp. 18-19 of 25; ¶ 6]. Debtor should be required to seek Court approval before closing or opening additional accounts.

43. Finally, the Debtor seeks to waive the notice requirements of FRBP 6003 and 6004, because it asserts that without immediate relief would disrupt Debtor's operations. [*See* ECF No. 7, p. 10 of 25]. Maintaining DIP accounts are a basic requirement of Debtors, and are designed to protect estate assets. Debtor has not set forth a sufficient legal or factual justification for waiving the protections afforded by Section 345, specifically those requiring estate accounts to be Debtor In Possession accounts. Accordingly, the Debtor has not provided sufficient evidence of "immediate and irreparable harm" to warrant relief under FRBP 6003.

44. For the reasons stated above, the relief requested by the Debtor in its Cash Management Motion should be denied.

   **C.**    **The United States Trustee's Response to the Equity Transfer Motion.**

45. The Equity Transfer Motion seeks to establish procedures before the Debtor's stock is transferred or declared worthless. [*See* ECF No. 10].

46. The United States Trustee objects to the Equity Transfer Motion for several reasons. First, the relief requested in the Equity Transfer Motion should not be granted on extremely short time, with little time for most creditors and parties in interest to formulate and file a written response to the First Day Motions. Additionally, certain parties with interests directly tied to the Debtor's business operations and this bankruptcy case (*e.g.,* regulatory agencies, state attorneys general, and the U.S. Attorney's office) appear to have not received notice of the filing of or hearing on these First Day Motions. Specifically, it does not appear that the U.S. Securities and

Exchange Commission ("SEC") was served notice of the Equity Transfer Motion or the OST associated with it. Notice to the SEC is a requirement of FRBP 2002(j).

47. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (internal citations omitted).

48. To the extent that the relief is granted at all for this motion, it should only be granted on an interim basis with a hearing noticed for final relief far enough in the future such that all creditors, parties in interest, taxing or regulatory authorities, shareholders, and official committees have an opportunity to object, preferably after the Debtor has filed its schedules and statements, and the Section 341 meeting of creditors has been held. The United States Trustee objects to the provision in the proposed form of order of the Equity Transfer Motion that would transform any interim order entered into a final order on negative notice. [*See* ECF No. 10, p. 17 of 48; ¶3]. The United States Trustee further requests that any interim Order entered on these First Day Motions require that the Debtor serve on any creditors or parties-in-interest who did not receive adequate notice copies of the First Day Orders and notice of any continued/subsequent hearing on the First Day Motions.

      **D.**      **The United States Trustee's Response to the Taxes Motion.**

49. The Taxes Motion seeks to pay certain pre-petition taxes, and a waiver of FRBP 6003 and 6004. [*See* ECF No. 13]. While the pre-petition taxes the Debtor seeks authority to pay appear to be set forth in the Taxes Motion, the list is not supported by a similar table in the Robbins Omnibus Declaration. [*Compare* ECF No. 13, pp. 2-3 of 16; ¶5 *with* ECF No. 19, pp. 31-33 of 38].

50. The United States Trustee objects to Taxes Motion for several reasons. First, the relief requested in the Taxes Motion should not be granted on extremely short time, with little time for most creditors and parties in interest to formulate and file a written response to the First Day Motions. Additionally, certain parties with interests directly tied to the Debtor's business

operations and this bankruptcy case (*e.g.*, regulatory agencies, state attorneys general, and the U.S. Attorney's office) appear to have not received notice of the filing of or hearing on these First Day Motions.

51. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (internal citations omitted).

52. To the extent that the relief is granted at all for this motion, it should only be granted on an interim basis with hearings noticed for final relief far enough in the future such that all creditors, parties in interest, taxing or regulatory authorities, shareholders, and official committees have an opportunity to object, preferably after the Debtor has filed its schedules and statements, and the Section 341 meeting of creditors has been held. The United States Trustee further requests that any interim Order entered on these First Day Motions require that the Debtor serve on any creditors or parties-in-interest who did not receive adequate notice copies of the First Day Orders and notice of any continued/subsequent hearing on the First Day Motions.

53. Second, the United States Trustee objects to the Taxes Motion because the list of pre-petition taxes to be paid are not supported by evidence in the form of a declaration. Third, the United States Trustee objects to the Taxes Motion to the extent that it seeks authority to pay pre-petition taxes other than the ones listed in the chart set forth in paragraph 5 of the Taxes Motion.

54. Finally, the Taxes Motion makes reference to personal obligations of the officers and directors of the Debtor. [*See* ECF No. 13, p. 5 of 16; ¶ 14]. The United States Trustee objects to any injunction that the order might arguably impose on pursuing any personal liability of the directors or shareholders.

**E.     The Extension Motion Should Be Denied**

55. This case was filed on December 7, 2018 without Schedules A/B through H, or the Statement of Financial of Affairs ("SOFA"). [*See* ECF No. 1].

56. Pursuant to FRBP 1007(c), Debtor must file, inter alia, its schedules and SOFA with 14 days of the petition, unless an extension is granted by the Court. *See* FED. R. BANKR. P.

1007(c).  Accordingly, without an extension, Debtor must file its schedules and statements by Friday, December 21, 2018.

57. The Section 341 meeting of creditors is set for Thursday, January 10, 2019.  [*See* ECF No. 3].

58. The Robbins Omnibus Declaration does not discuss the Extension Motion.  [*See* ECF No. 19].

59. The Extension Motion provides that the Debtor has an "expansive" business and the bankruptcy petition was filed on an emergency basis, and therefore requests an extension to January 20, 2019.  [*See* ECF No. 16, pp. 2-3 of 19].

60. The United States Trustee objects to the Extension Motion for several reasons.  First, despite the Debtor's assertion that the case was filed on an emergency basis, the corporate resolution authorizing the bankruptcy filing was dated November 7, 2018, a month before Debtor filed.  [*See* ECF No. 1, p. 8 of 67].  Accordingly, Debtor has had several weeks to ready its schedules.  It is unclear why the Debtor does not already have its schedules prepared, and the Debtor should be required to provide specific evidence to support any extension request.

61. Second, through its First Day Motions, Debtor is seeking a broad range of relief on extremely short notice, if any, on a final basis.  [*See* ECF Nos. 4-30].  The extension it seeks is ten days after the date set for the Section 341 meeting of creditors.   The Debtor should not be allowed to withhold basic, vital information from creditors and parties in while it seeks permanent relief through numerous first day motions, with little or no notice.

62. Third, the relief requested in the Extension Motion should not be granted on extremely short time, with little time for most creditors and parties in interest to formulate and file a written response to the First Day Motions.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (internal citations omitted).

63. Accordingly, the Extension Motion should be denied, or an extension should only be granted through Thursday, December 27, 2018. Not only will this provide an opportunity for

the United States Trustee to conduct the Initial Debtor Interview, it will also afford creditors and parties in interest sufficient time to review these schedules before the Section 341 meeting of creditors.

64. For the reasons set for the above, the Omnibus Objection should be sustained as to the Motions, and the relief requested by Debtor in those motions should be denied.

### III. CONCLUSION

65. In view of the shortened notice provided, if at all, to creditors and/or parties in interest and the Debtor's failure to establish a sufficient evidentiary record for the relief sought, the First Day Motions should either be denied in the entirety or any relief granted should be limited for the Debtor to sustain operations and to provide adequate protection, if any. Alternatively, the hearings on the Motions should be adjourned until a later date. The adjournment would permit parties that were not provided sufficient notice and any committee the opportunity to be heard on the Motions.

66. If the Court grants any of the relief sought in the Motions, the United States Trustee requests that any committee appointed under Section 1102 be permitted the right to reconsider the Motions.

67. The United States Trustee also expressly reserves her rights to object to any amendments made to the First Day Motions, or any other additional relief requested in any subsequently-filed motion.

**WHEREFORE**, the United States Trustee requests to Court to sustain her Omnibus Objection; and grant such other relief as is just under the circumstances.

Dated: December 10, 2018

    Respectfully Submitted,

    TRACY HOPE DAVIS
    UNITED STATES TRUSTEE

By:    /s/ *Edward M. McDonald Jr.*
    Edward M. McDonald Jr.
    Trial Attorney